JAMES A. WILLIAMS vs. JOHN C. CHAMPLIN et al.

PROVIDENCE—OCTOBER 5, 1904.

PRESENT: Tillinghast, Douglas, and Blodgett, JJ.

(1) Wardens' Court.  Certifying Cause to Another District.  Mandamus.
Board of Canvassers.  Illegal Voting.

Mandamus will not lie to compel the wardens of the town of New Shoreham,
who were also members of the board of canvassers of said town, to certify
certain complaints for alleged illegal voting, pending before said wardens'
court, to the District Court of the First Judicial District, under the pro-
visions of Gen. Laws cap. 228, § 16, on the ground that said wardens were
disqualified to act because, as members of the board of canvassers, they
approved the voting-lists used at the election where such illegal voting
occurred, where it appears that the qualifications of the defendants as legal
voters was never litigated before or determined by the board of canvassers.

(2) Mandamus.  Private Relator.

Quære, whether, under the rule in O'Brien v. Board of Aldermen, 18 R. I. 113,
mandamus would lie at the relation of a private citizen, without a request to
the attorney-general to act.

(3) Certifying Action to Another District Court.

Quære, whether a cause can, under Gen. Laws cap 228, § 16, be certified from
the wardens' court of New Shoreham to the District Court of the First
Judicial District, inasmuch as New Shoreham, under Gen. Laws cap. 228,
§ 1, would seem to be a part of said first district.

PETITION for writs of mandamus and prohibition.  Heard,
and petitions denied.

BLODGETT, J.  The substantial averments in this petition
for a writ of mandamus are that there are certain complaints
against one Baird and one Wallace for alleged illegal voting
in the town of New Shoreham on November 3, 1903, now
pending before the respondents Champlin and Mott, as ward-
ens of that town, in which the relator is complainant, to which
complaints the said Baird and Wallace have severally pleaded
not guilty, and that said complaints now stand for trial on
that issue.  The grounds of the alleged illegal voting in each
case are set forth in the complaints that the respondents
respectively were not residents of said town at the election at
which they were charged with so voting, and the relator de-

sires a writ of prohibition to the wardens, Champlin and Mott, respectively, to refrain from hearing said cases, as well as a writ of *mandamus* requiring the case to be certified to the District Court of the First Judicial District for trial under the provisions of § 16, cap. 228, Gen. Laws, because of the alleged disqualification of said wardens respectively.

The section in question is as follows:

"Whenever any justice, or assistant justice, or clerk acting as justice, of a district court shall be a party to any action or proceeding, civil or criminal, or be interested in the event thereof, or disqualified from sitting therein, such action or proceeding shall, if brought before said district court, be by said court certified to and heard by such district court in an adjoining district as the plaintiff's counsel shall select."

The alleged disqualification of the wardens Champlin and Mott is averred to be that as members of the board of convassers of said town, on October 29, 1903, they approved the voting-lists to be used on November 3, 1903, and have, therefore, already decided the issue raised in the complaints.

(2)  At the threshold of the inquiry we observe that the decision of this court in *O'Brien* v. *Board of Aldermen of Pawtucket,* 18 R. I. 113 (1892), is to the effect that "a petition for the enforcement of a purely public right or duty should be brought by the proper public officer to whom it appertains, to see to the enforcement of the right or duty in question." In sustaining the demurrer to the petition for a writ of *mandamus,* the court said: "The burdens of public officers are sufficiently serious in themselves to make the best men of almost every community reluctant to assume them, but if, in addition, public officers are liable to be brought into court at the call of every citizen who may think he has a grievance in the non-enforcement of a purely public duty, such burdens will be greatly enhanced. . . . But in the first instance the duty to move in the enforcement of a public right should be upon a public officer. This is not only more consistent with our form of government and more orderly in its method, but it prevents the annoyance and expense which would be incident to a rule allowing any citizen to be a prosecutor. . . . If in-

dividuals may be prosecutors, and a suit should be brought by one which should fail, it would be no bar to a suit by another who was not a party to the first one. . . . Suits for the public should be placed in public and responsible hands."

While this seems to be decisive of the right of the relator to a writ of *mandamus* as prayed, for the enforcement of a purely public right, the relator not having first requested the attorney-general to act in the premises, yet, inasmuch as testimony has been offered and the case argued upon other grounds, we proceed to a consideration of those grounds.

(1)    At the hearing it was undisputed that the respondent Champlin was the presiding officer of the board of canvassers at the canvass meeting in question, and that he merely presided thereat and did not vote on any matter relative to said Baird or said Wallace. And this fact would seem to be a sufficient answer to the averments of the petition as to the respondent Champlin. But it further appears that no witnesses were examined or other evidence considered by the board of canvassers as to the qualifications of either Baird or Wallace.

It is also undisputed that the said Baird and Wallace registered as required by law in the town clerk's office in New Shoreham, and that at the annual canvass meeting held on "the Tuesday next after the first Monday in September," 1903, under the provisions of §§ 3, 4, cap. 8, Gen. Laws, as amended by §§ 5 and 6 of cap. 808 of the Public Laws, the names of Baird and Wallace were placed on the voting-list from the registry book without objection.

The relator offers the testimony of Edward M. Sullivan, an attorney of this court, to the effect that at the October canvass meeting aforesaid he challenged the right of Wallace and Baird, and of many others, to vote at the ensuing election, the grounds being, in the cases of Baird and Wallace, that they were not residents of New Shoreham.

Mr. Sullivan testifies that he objected to those names, respectively, as they were alphabetically called off by the chairman of the board of canvassers, and stated that he was prepared to offer evidence as to the non-residence of each of them. He does not claim that he asked that any specific witnesses

be sworn or that he gave the names of any specific witnesses to the board in either case, and he is contradicted, both as to his challenging said names as they were severally reached and as to his statement of his readiness to offer evidence upon either name by three witnesses, including both the presiding officer of the board and the town clerk who was *ex-officio* the clerk of the board.

At most, then, it can only be said that the board declined to remove from the list the names of two persons, placed thereon at the annual canvass meeting, a little more than thirty days before, without objection, upon the challenge of Mr. Sullivan and without the consideration of any evidence for or against either of them.

Doubtless it is the duty of a board of canvassers to hear evidence offered at a canvass meeting upon the qualifications of persons whose names are sought to be added or to be removed from the voting-lists. But all the witnesses agree that the names of about twenty other persons were removed upon Mr. Sullivan's challenge, and three witnesses, including the chairman and the clerk of the board, testify that no evidence was offered as to Baird and Wallace, and no challenge made as to their qualifications until after the final vote approving the voting-list as canvassed had been passed, when Mr. Sullivan handed a list of names to the board containing the names of Baird and Wallace, among others, with the statement that he objected to all the names thereon. We are not now concerned with the inquiry whether it would not have been proper for said board to inquire whether the challenger was prepared to offer evidence thereon under the provisions of § 11, cap. 8, Gen. Laws, as follows:

"No name shall be stricken from the voting-list by any board of canvassers, unless proof shall be presented to said canvassers that such name is the name of a person not qualified to vote, or who may not be qualified according to the provisions of this title," and then to hear and consider the evidence so offered, if any; but the question before us is whether that which was done constitutes in law a disqualification to hear and decide the charges of illegal voting at said election.

Undoubtedly, as claimed by the relator, the action of a board of canvassers is judicial in its nature,. and. its. action cannot be reviewed .by this .court either by. *mandamus* .proceedings or by writ of *quo warranto.* *Weeden* v. *Town Council of Richmond,* 9 R. I. 128; *Keenan* v. *Cook,* 12 .R. I. 52; *Sherry* v. *O'Brien,* 22 R. I. 319; *Cannon* v. *Board of Canvassers,* 24 R. I. 473. .

In the petition before the court the question of the residence of Baird and Wallace has never been litigated, however, their names having been placed on the voting-lists at the annual canvass meeting in September, without objection, upon their statement in the registry book, made under the penalty provided by law for a false registration, and no evidence was heard by said board either in support thereof or in opposition thereto; and, inasmuch as the question of their residence has not yet been litigated on. any issue joined, we fail .to see any legal disqualification on the part of the respondents Champlin and Mott to hear the charges in the complaints.

(3)   The conclusion to which we have arrived precludes the necessity of considering the other questions which are urged upon our consideration, further than to say that it is not clear that in any event the cases should be certified to the District Court. of the First Judicial District, inasmuch as New Shoreham appears to be still a part of. that district (§ 1, cap. 228, Gen. Laws), and to observe that the issues raised in the complaints. are in law not necessarily the same as those which might have been raised at the final canvass meeting, inasmuch as it may appear upon the trial of the complaints that, although the statement made in the registry book was a false statement at the time of registration as to residence, or was of insufficient duration on October 29, nevertheless the accused may have acquired a legal residence prior to the day of. the election, or they may not have voted thereat, in manner and form as. charged in the complaint.

The prohibition heretofore granted is vacated, the petition for a writ of *mandamus* is denied, and the warden having jurisdiction in the premises will proceed to hear and dispose of the

cases on October 12, 1904, beginning said hearing at 10 o'clock
A. M., on that day.

*James J. McCabe,* for petitioner.

*Barney &'Lee and Harry C. Curtis,* for respondents.